Case number 23-1902 from the District of Western Missouri, Rockne Miller v. Elizabeth Ziegler at all. Mr. Bradbury. May it please the court. My name is Cole Bradbury. I represent the challengers, Rocky Miller, John Lovanchi and Presidio Environmental LLC in this matter. I have reserved five minutes for rebuttal. When the government restricts speech, the government bears the burden to prove the constitutionality of its actions. This record does not carry the government's burden in this case. I'm here to discuss why that record fails to carry that burden and why the Missouri Ethics Commission's expert witness does not belong in that record. What is the standard of review here, and you might be getting into this, but exacting scrutiny or strict scrutiny? The plaintiffs, challengers stand by strict scrutiny. Obviously, we believe we prevail under either exacting or strict, and there's a number of cases that have declined to answer that question. Very recently, Calzone, Ted Cruz for Senate, have discussed that issue but avoided reaching it because the result was the same. But this is a burden on political speech. Citizens United says burdens on political speech get strict scrutiny, and the plaintiffs, challengers wholeheartedly stand by strict scrutiny in this case. Does that make it different from the disclosure case? As I recall, the Calzone was a disclosure case, and we applied exacting scrutiny. So I'm wondering, I guess in your view, this would be different because it's an actual burden on speech, no lobbying at all. There's no disclosure. Correct. In fact, Rocky Miller tried to register to engage it with the MEC's disclosure regime that Calzone discussed, even discussed that that regime is a heavy burden on speech, but there's no disclosure required by the lobbying ban. In fact, the lobbying ban prevents disclosure because it says thou shalt not be paid to lobby, serve as a paid lobbyist. It's actually act or serve as a paid lobbyist, register as a paid lobbyist, or solicit prospective employers or clients. That's not a disclosure law. The Missouri Ethics Commission raised that defense in the Clarr case as well, and this court rejected that defense as well in Clarr. There are a few reasons why this record does not carry MEC's burden. First and foremost, MEC's- Now we're challenging both facial and as applied. Correct. And I don't know which you're arguing, but I want to start with the facial. Yes. What remedy, what relief do you see with respect to the application of the statute before Mr. Miller left the legislature? Mr. Miller didn't sue until after he left the legislature. Let's answer the question because I don't think there is an easy answer. The only conduct that the challengers are seeking to engage in while they're still employed by the state is that John Levanti, the current legislative assistant who's still employed by the house- Wait. I'm talking facial. Don't get into as applied. Because if it's facially valid as to Miller, then it's facially valid, period. And we go to as applied. So I want to know why is it facially invalid as to Miller? It's facially invalid as to Miller. What relief for other legislators? We are seeking an injunction prohibiting the MEC from enforcing the lobbying ban post-employment. This is a challenge to the post-employment component of the lobbying ban. That's not a facial attack on the statute. It's a facial attack on its application to not just the challengers, but all of them. It cannot be constitutionally applied to any state representative, not just a state representative who, in Rocky Miller's unique factual situation with Presidio. Well, but here's what's prompting my concern. It seems to me the state, acting through its legislature or by constitutional amendment, could prohibit any member of the elected legislature from any other paid undertaking while serving. There are- Or is your theory that any state that did that would be subject to a constitutional challenge for any legislator who said, I want to be paid to do something like being a weatherman that involves my protected activity of speech? The in-office component of the lobbying ban has not been challenged by the challengers here, except as to John Levanchy, who is seeking to apply for positions while still employed by the legislature. So that would be the solicited prospective employers or clients. I kind of wonder whether this is just a different species of an as-applied challenge. And the reason why I say that is because facial is usually you can't apply it to anyone, anytime, anywhere. And it's a very broad as-applied challenge. But I wonder if by leaving out the component that they could ban people from doing it while in office. Or is the argument here that the statute doesn't even apply to people in office? It's unclear, but that would be an as-applied challenge if it was only to some people, people who have left office or left the legislature. That would be a broad as-applied challenge. I think you could certainly view it as a broad as-applied challenge. I view it as a facial challenge to part of the tax, part of the lobbying ban, the constitutional amendment. What's your best case for that concept? For splitting the ban? No, that a facial, that you can somehow go in and call it a facial attack and just split apart the statute and pick and choose. We haven't, well, that really hasn't been raised by MEC and we really haven't briefed it very much at all. Well, you're asking us to make law that would, as far as I know, blaze a new trail. What we're asking is to enjoin the post-employment application of the law. If you'd rather view it as a broad as-applied as opposed to a partial facial challenge. I certainly see Judge Strauss' point here. And really, I do the case law on facial versus as-applied, both in Calzone, Citizens United, and Cruz all discuss that they are really different flavors of the same claim. And it's just, it really speaks, I think Citizens United says that the facial versus as-applied challenge distinction speaks to the scope of the remedy and rather the analysis of the challenge. Yeah, I don't think in the end maybe it makes a lot of difference because you still would apply strict scrutiny, I think, to that segment of people, but we'd have to maybe change from the facial, the narrower facial or stricter facial standard to sort of an as-applied standard when we do it. I think that's a valid point. It's certainly a reasonable way to look at it. I guess the one point I do really want to make, though, is that when we get into the as-applied, there was a very brief suggestion, I don't believe it's in the briefs anywhere, but MEC did suggest to the district court briefly that the challenge should be viewed as as-applied and then only as to these three particular parties. And I do think that is not an appropriate way to view this case because if the lobbying ban cannot be constitutionally applied to a state representative and to a legislative assistant, which are the two most numerous titles in the legislature, this isn't in the record, but those two comprise over half the paid positions in the General Assembly. If it can't be applied to those two people who are at the very core of employees of the General Assembly, then it can't be applied to any employee of the General Assembly. On the staffers, the theory that the staffer, if this ban wasn't in place, could leave the legislature and earn more money as a paid lobbyist, but can't do it for two years and therefore is sort of stuck in the legislature because that's what they want to do is be a paid lobbyist. Is that the theory you're sort of pushing? Yes, it kind of harkens back to the logic behind Treasury employees, although that's the pickering line that is different, but it's the same logic that it essentially commits them to government employment. The only exception that the MEC has identified is this legislative liaison example, but the record does show that only one of those positions opened in nine years while Levanchy has been employed before one of the hearings, the injunction hearing. There's only 15 to 25 of those positions statewide, but we're talking about 163 state representatives, approximately one legislative assistant per, plus the Senate, plus their staff. That doesn't get people out of legislative employment or government employment, and frankly it commits them to sort of a two-year supervised release of working for the government in order to be able to go make more money to be paid. So tell me why this, applying whatever scrutiny you want, I guess it doesn't matter what type of scrutiny, but why is there no compelling interest here? Quid pro quo corruption or the appearance thereof? Why isn't that satisfied? It's not that the state doesn't have a quid pro quo interest. All states, all governments have an interest in producing quid pro quo and the appearance thereof. It's that the state hasn't proven that this law furthers that interest, and that is the standard. There's a hidden kind of causation requirement in the Citizens United recitation of strict scrutiny that the challenge law must further the strict scrutiny interest, and that the law must be narrowly tailored to achieve that interest, and that's the issue. What about this expert testimony that was admitted? Well, obviously the challengers don't believe that it should have been admitted, of course, but even if the testimony is admitted, and really we believe that the testimony is the best defense that they can put forward for this law, it doesn't actually show anything. First of all, we have the stipulation where MEC has admitted that it has no real world examples of this at all, and Free and Fair Election Fund, Cruz, Citizens United, McCutcheon have all held that the lack of such examples is really important, if not quite this positive. But the reason the expert's not admissible, very briefly, a simple way to say it is, her opinions are more editorial than expert. She certainly has very strongly held opinions. She was in Congress for a long time, but at the end of the... That struck me as argument rather than testimony. Yes, struck me that the same way as well, especially given the stipulation that there's no evidence in Missouri, and that she didn't look at any evidence in Missouri. I want to nail this point down on the compelling government interest, because I don't know what... So I understand the argument to be here that there is a compelling government interest in the abstract, in corruption or the appearance thereof, stopping it. But what I don't understand you to... What I understand you to be arguing is, but Missouri doesn't have that problem, at least with respect to paid lobbying, because the expert couldn't cite any circumstances at all about whether a Missouri person went in and did, quid pro quo corruption in exchange for a lobbying job. So is that compelling government interest, or is that furthering the government interest? I kind of view it as the former, not the latter. You can see it either way. And I'm sorry, I'm into my rebuttal time, but I do want to answer that question. Cruz took the approach of, we're not even going to get into the strict scrutiny analysis, because the FEC, the federal government, had not proven that they were even attempting to address quid pro quo. And that was the proof that Missouri doesn't have this problem, the way you just said it. Versus Citizens United, Free and Fair, CLAR, Calzone, go through the full analysis and find that the law doesn't actually further the law under strict scrutiny, further the interest under strict scrutiny. So your argument would be this is a Cruz case, really? My argument is that it's both. Okay, it's both. Got it. Thank you. Mr. Lewis. May it please the court, Jason Lewis on behalf of the state respondents in this matter. I would like to pick up where my friend on the other side had left off, and that is to discuss the evidence in the record. And I think for two principal reasons, there is sufficient evidence in the record concerning what the lobbying ban here was intended to prevent. Number one, if this court does look to the most persuasive guidance from other district courts, we're thinking about the Brinkman case from the Southern District of Ohio, and the Garcia case just from about a year ago from the Southern District of Florida. In that case, the district court did not discuss the fact that there may have been an absence, or maybe even a plethora of examples where the bans in those cases were designed to prevent. So the most persuasive guidance from the district courts examining very similar issues did not stress that issue. Number two, the problem is you cannot solve under strict scrutiny a theoretical problem. You can't have a treatment in search of a disease. That just doesn't work. It works for rational basis. It may even work for intermediate scrutiny, though I'm not sure. But it certainly does not work for strict or exacting scrutiny. Judge Strauss, respectfully, I'd like to push back on that a little bit. I think what Your Honor is referring to is some guidance from the Cruz case, which for the reasons that are brief, we do not think is the most persuasive. But Cruz certainly does stand for the proposition. Not persuasive? The most recent Supreme Court case is not persuasive on us? For us? We think that the law in Cruz is so dissimilar from the law here that the analysis for strict scrutiny could be pertinent. It's distinguishable. It's distinguishable. It's controlling us. It's not distinguishable. Your Honor, I think that is a more artful way of saying what I had tried to say. But I'm not even sure that's right, because it's a burden on political speech, not a disclosure. So it's not a calzone case. And so you're still in strict scrutiny land, which again, I'm even getting beyond First Amendment. You can't justify something, I don't think, without showing that it's an actual problem and not a theoretical problem. Judge Strauss, this is what I was trying to get at to distinguish the Cruz case. Cruz certainly does have language holding that more than mere conjecture is required to meet a burden under strict scrutiny. But what Cruz does not stand for, the proposition, is that there is a diminishing governmental interest if one cannot point to a documented instance of something that would have been followed within the ambit. And the district court here was getting at this issue, right? So the district court here, we think, correctly concluded that Missouri voters did believe that there is an issue here. And even if there is not a documented instance of quid pro quo, certainly under McCutcheon and its progeny, the appearance of quid pro quo is another compelling governmental interest, whether under strict or exacting. Now, wait a minute. Here's a quote from McCutcheon and Cruz. The government may not seek to limit the appearance of mere influence or of access. And Judge Loken, I think that is getting to the appearance. But McCutcheon also does hold that the appearance of quid pro quo corruption is sufficient. And here we do have sufficient evidence in the record. Number one, when the first lobbying ban was passed in 2018, before it was subsequently revised, there was a representative that did resign moments later because he, this was Ken Corlew was his name, because he wanted to engage in this activity immediately. And our expert did find, and there's testimony about this, did find that that is sufficient to raise quid pro quo appearance issues. Our expert also did, contrary to what my friend on the other side had argued, did examine at least one Missouri instance that might not have been covered by the quid pro quo portion of this, perhaps the appearance. And that is with former Speaker Bob Griffin, who a number of years ago, while he was still in office, did accept bribes in connection with political favors. But it had nothing to do with lobbying, is my understanding. I mean, zero to do with lobbying. What it has to do, and this is what this court en banc was, I think, getting at in the Calzone against Summers case. And that is that the state can have a compelling interest when there is the exchange of money between hands. And that is how the en banc court here was trying to distinguish what could have been permissible in Summers, which wasn't there, because Mr. Calzone in that case was tending to engage in more uncompensated lobbying. But there's a difference between paying somebody for legitimate services and paying somebody a bribe. And my understanding is this law doesn't even get to the bribe. It doesn't get to the former speaker because that speaker wasn't a paid lobbyist. So it doesn't even, my problem is we just don't even have a single example from around the country where this is a problem. From the quid, from the actual documented instance of quid pro quo, your honor, that is a fair statement. But again, I'm calling back to McCutcheon where the appearance of it and the expert deposition here, the testimony preliminary injunction hearing, the expert report that is in evidence, all talks about why the appearance is there and why 62% of Missourians in 2018, over a million voters, wanted more than what was currently in law. At the time, there were bans on... But you know, the purpose of the Bill of Rights is to restrain lawmakers and the people from invading individual liberties. So I'm not sure that the vote is entitled to a great deal of weight. That doesn't help. I mean, it's just as one might simply assume that there was just kind of an unreasonable and cynical and jaded view of legislative activity. Not that there's any real, objectively real, reasonable suspicion or sense of impropriety with respect to the quid pro quo actual activity. I don't see that as, in my mind at least, as particularly compelling. Sure. Judge Arnold, I have two responses to this. The first is while I think the case law does distinguish slightly between the absence of a legislative record when you do have an initiative petition here. Number one, Missourians did decide that there's going to be a scope of what permissible activity is. This speech is still permitted. One just can't get paid for it, right? And this is what the Garcia case and the Brinkman case and even Calzone with the lobbying disclosure regime law took pains to address. It is the receipt of compensation that is the critically distinguishing factor here. Mr. LaVance, Mr. Miller can still engage in protected First Amendment speech in a variety of ways. Number one, they can lobby. They just can't get paid for it. But it's a receipt of money from a constituent, a private party, not from a government employee. So I think under the US Supreme Court, its analysis in similar situations, and this is what Garcia and Brinkman addressed as well, when there are ample opportunities to engage in the conduct, that goes to a tailoring issue. And that is why Garcia and I think Brinkman are most distinguishable here, right? Because the Southern District of Florida in Garcia did strike the law, but it took pains to strongly suggest that if it was only limited to a narrow scope of employees, which we have here, right? Because the Florida law applied to county level officials, applied to statewide officials, executive and legislative. Here, the Missouri ban applies only to state legislative employees and legislators. So we have that tailoring issue, but also Garcia strongly suggests, I don't think there's any other way to read that case, and Brinkman enforces it too, that if the ban were to have been tailored only to compensate a lobbying, it would have been upheld. What about presidios, right? And this gets to Judge Loken's point. He said it's from a private constituent. So what's weird about this case, not weird, but what's unique about this case is you have presidio not having the ability to hire a lobbyist of their choice, and you have the former legislator not being able to serve as a lobbyist. So you have sort of a match made in heaven among the two parties, but neither one of them can speak in that instance. Your Honor, I think two things. Number one, the record here is crystal clear that presidio, number one, ultimately did hire another lobbyist. It engaged in the speech and wanted to, just perhaps not with the initially desired messenger to do it, but the speech was still there. Presidio still did hire a paid lobbyist. Number two, the record is also pretty clear on this point that the reasons why presidio wanted a paid lobbyist, rather any lobbyist at all, would be to just educate legislators on the issue of, I believe it was environmental engineering for environment, for educational purposes. The lobbying ban would not have covered this. So here we have a scope and a tailoring problem, not with respect to what the ban applies to, but with whether the cover, the activities that the challengers wanted to engage in would even have been covered by the ban at all. And the record below does not show that it would have been covered by the ban at all. If all they wanted to do was to set up a meeting and engage in just general education, that is what the testimony of the hearing below shows. Let me ask you real quick about tailoring. Why does this cover only, because you brought up the education point, why does this cover only permanent lobbying, but not occasional lobbying? Because that seems to be a tailoring problem as well and would go towards, I guess, under-inclusiveness. I think, Your Honor, if one were to start from scratch, if this court were to start from scratch and actually design a law from the ground up, there would be a number of ways to tailor a law in a just-so way. Perhaps it could have been slightly more tailored to only cover 50% plus one of lobbying over the course of some period of time. One can envision almost always a way to more narrowly tailor a law, but then you're getting into infinitesimal regression issues. There's always one more way to just slightly tailor it every so often. That's not what the jurisprudence in McCutcheon and certainly not what the district courts in Brinkman or Garcia ever discussed. In fact, in those cases, the laws were struck partly because they were too broad with respect to who they covered. Again, in Garcia, the laws covered not just state-level officials, but also county-level employees. In the Treasury employees case, the appellants hang their hat on quite a lot. That case covered, that law covered all federal government employees. Whether you're elected or appointed, it could be any government official. Here, Missouri's law is sufficiently narrowly tailored. Only just because there could be one hypothetical way to do it just slightly more does not mean that I think parties need to keep going before the court to find the perfect fit. How do I know two years is right? I mean, I know there's that evidence that whatever said nine states out of 50 did it from the expert. Seven out of 50. How do we know that's right? Could they pass a 10-year ban? Because if appearance is all we're concerned about, boy, a 10-year ban accomplishes that a heck of a lot better than a two-year ban does. Right, and I think, Your Honor, that's sort of the inverse. The question that you just asked, are there ways to solve the problem even better? I think certainly that's what Florida tried to do with this ban on Garcia. That was a six-year ban, and the district court found that that was too long. We think six years is, that's probably approaching it. And even in Florida, that law was on the upper end of the landscape of states of the 43 other states, the 43 states rather, with a similar ban. Missouri's, as our expert found in just legislative research finds, Missouri's two-year ban is very consistent as sort of the median, maybe slightly lower the median, but certainly approaching median for the landscape across the country. And again, under Garcia, Brinkman, Calzone, the question is not whether there is one small way to maybe narrowly tailor it by one fewer day, right? So maybe it's 364 days out of 365. That would be more narrowly tailored, but what's the threshold there? It's sort of like the logical problem of the problem of the heap. If you keep dropping kernels of grains of sand onto a heap, when does it become a heap of sand versus just a collection of some numbers of grain of sand? Here, the tailoring issue is just right the same thing. Under Brinkman and Garcia, Missouri's ban is completely consistent with what those courts found were the problems in those cases. And Missouri tried to solve it with a two-year ban applying only to statewide elected officials that applies only to paid lobbying. And there are ample additional ways for the challengers, for LaVance and Miller to engage in that speech. They could respond to questions from legislators. They can testify. They can be a legislative liaison for a state agency. And of course, they can do any amount of lobbying they want. They just can't get paid for it. This targets the receipt of compensation, not the speech itself. Well, it's like a two-year covenant not to compete in contract terms. Similar, Judge, and I think- And those are often invalidated because they're unreasonable. They often are, but they are also upheld if they meet the right kind of tailoring problems here. I think- They don't burden the First Amendment rights. Right, just simply employment. And as an employer, the General Assembly is certainly within its rights to be able to have some sort of post-employment restrictions, but that's sort of conceptually- Wait, wait, wait, why? So the General Assembly employs individuals, certainly individuals like Mr. LaVance who's a legislative assistant, you know, does have the right to be able to restrict employment so long as it is furthering the government's interest. Again, we think exacting scrutiny applies here, and there is more than sufficient evidence in the record that what the ban here is trying to further is certainly the appearance of quid pro quo corruption, but we think it also does drive to root out any potential quid pro quo corruption- Why exacting scrutiny? I got to follow up on that because this is not a disclosure law. I think that's quite clear. Right, and I think as Mr. Bradbury and I probably agree, there have been a number of cases where the courts have been sort of reluctant to actually say this is what we're applying, but it would pass muster under either standard. We do think that this survives strict as a district court found or exacting, but to your point, why isn't it exacting? I don't think the En Banc Court in Calzone held that exacting scrutiny can only apply only if there's a disclosure law in place. Exacting scrutiny, you do need to look to see, and I think sort of going to first principles analysis to look to see what are the aims of this law? What is it trying to prevent here? What is a content neutral? Is it not? And from there, apply what the right standard is. And we think exacting is more consistent. One more, which is, I don't think McConnell and Cruz are consistent with that. I think that they suggest that you don't get to like sort of do the means in balancing to figure out what means in balancing test applies. Your Honor, the state respondents would be pleased with clarification from this court on this issue, but we do not think that the En Banc decision in Calzone is limited to saying that exacting only applies in disclosure. And we don't think that the other two cases from the Supreme Court, Your Honor mentioned, also prevent, you know, sort of digging a little bit into, you know, what is this trying to prevent? Is this content based or not content based? I think there is some suggestion you can put the cart before the horse a little bit, but we do think exacting can apply. Even if it doesn't, the district court should be affirmed under strict scrutiny. Thank you, Your Honors. May it please the court. I have a lot to cover and not a lot of time. Very briefly, I want to point out as to Judge Loken's covenant not to compete comment. The state legislature did not choose this as a restriction on its employees. The voters did. So this is not the legislature choosing to impose this as a condition on their employees acting as an employer. Second, I want to push back hard on the argument that... But it's in the constitution. The voters did put it in the state constitution. Well, okay. So it's even more powerful. It is, but it's still, the Supremacy Clause still says it cannot override the First Amendment. Second, I want to push back very hard on the idea that it's undisputed that Presidio, with the activity that Presidio wanted to hire Miller for is allowed under the lobbying ban. The appendix, page 230, paragraph 26. Presidio approached Miller about lobbying at 235, paragraph 47. Presidio did not hire Miller because of his inability to register as a lobbyist. Those were admitted by the MEC. Those are facts not in dispute. This is while still serving, right? No, this is... All of this occurred post-service. Miller was contacted while he was still serving. They knew each other while he was serving, but the undisputed record is that none of these conversations about lobbying occurred until well after he left, until well after Miller left service. I also want to discuss the question about the burden on the payor-payee analysis as the district court discussed it that Judge Logan asked and Judge Strauss followed up on. There are a lot of cases that have the payor or the payee. Cruz has the lender and the debtor challenge. McCutcheon was the donor and the donee. Buckley v. American Constitutional Law Foundation also had both sides of the transaction. But Treasury Employees was only about the payees challenging. There was no payor challenging that restriction. In Meyer v. Grant, it was the payors only challenging, the people who wanted to pay the signature gatherers. And 303 Creative held last year by the Supreme Court that a speechwriter doesn't lose his First Amendment right to choose for whom he works simply because he is paid. Last, I want to put in a word for John Levanchy. Mr. Levanchy is still employed by the House. He couldn't be here today because he has to work. They're in session today. The MEC's expert, Meredith McGee, could not, actually opined that some lower-level legislative employees should not be covered by the lobbying ban. Their own expert said the law is too broad, at least as it applies to low-level employees. She could not say whether or not that ban should apply to Mr. Levanchy because she did not know enough about him. And I see my time is up. Thank you. Thank you, Counsel. Case has been very well briefed and argued. Argument's been helpful and we'll take it under advisement.